UNITED STATES LIFE INS. CO. v. ROSS.

(Circuit Court of Appeals, Fifth Circuit.   June 1, 1900.)

1. DEPOSITIONS—RESIDENCE OF WITNESS—DEATH—MOTION TO SUPPRESS.

Under Act Cong. March 9, 1892, providing that the deposition of a witness taken in the mode prescribed by the laws of the state where the action is pending, and under Rev. St. § 865, providing that, when a deposition has been properly taken, it may be used on the trial if the witness be dead, where the deposition of a witness residing within 100 miles of the place where court is held is taken in a cause pending in the state court, in accord with the laws of the state, the deposition will not be suppressed, upon removal of the cause to the federal court, on the ground of the witness residing within 100 miles of the place of holding court, if the witness be dead when the motion is made.

2. SAME—NOTICE OF TAKING—SERVICE ON ATTORNEY FOR FOREIGN INSURANCE COMPANY—REVOCATION OF APPOINTMENT.

After the appointment of H. as state agent and attorney to accept service for defendant had been revoked, and before another attorney to accept service had been appointed, plaintiff gave notice to defendant. by service on H., for the taking of H.'s deposition. Held that, since defendant could not revoke the authority of its attorney to accept service without appointing another on whom service could be made, the deposition of H. could not be . suppressed for want of service on defendant.

3. LIFE INSURANCE—ACTION ON POLICY—EVIDENCE—DIRECTING VERDICT.

The undisputed evidence showed that about four months before the death of plaintiff's intestate defendant issued to him a policy of insurance upon his life, and transmitted it to its general agent for the state of Texas for delivery; that the deceased accepted the policy, but by agreement the agent paid for him the first premium, and retained possession of the policy; that about 60 days thereafter defendant received the first semi-annual premium, while deceased was in good health, and retained the same until advised of the death of intestate. Held, that the court properly instructed the jury to find for plaintiff.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of Texas.

Geo. Clark and D. C. Bolinger, for plaintiff in error.

W. S. Baker, S. P. Ross, and D. H. Hardy, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   On October 21, 1897, J. E. Ross, the defendant in error, administrator of R. L. Long, deceased, brought his action against the United States Life Insurance Company, the plaintiff in error, in the state district court of Limestone county, Tex., to recover the sum of a policy of insurance alleged to have been issued to the intestate, with legal interest thereon, and 12 per cent. damages, and a reasonable attorney's fee.   The cause was duly removed into the circuit court of the United States for the Northern district of Texas, and such proceedings were had therein as resulted in a judgment in favor of the defendant in error.

The specifications of error relied on to reverse this judgment are: (1) That the court erred in overruling the motion of the plaintiff in error to suppress the deposition of J. W. Harris, and in admitting that deposition to be read in evidence over the objection of the plaintiff in error; (2) that the court erred in instructing the jury to return

a verdict for the defendant in error, over the objections of the plaintiff in error, made at the time, for the reason that the evidence in this case was conflicting as to whether the policy of insurance sued upon had been delivered to plaintiff's intestate during his lifetime. Six errors are assigned, but the foregoing statement is the substance of the contention made by the plaintiff in error in this court.

In the circuit court the plaintiff in error made two motions to suppress the deposition of the witness J. W. Harris, the first of which was filed on April 1, 1898, and the ground of this motion was that the deposition was taken without giving the plaintiff in error legal notice thereof. The United States Life Insurance Company is a corporation organized under the laws of the state of New York. On the 7th day of October, 1893, by an agreement in writing, it appointed James W. Harris, of Waco, Tex., its agent for all that part of the state of Texas in which it authorizes its agents to do business (except a certain portion then under contract to A. J. Miller, of Ft. Worth), and at or about the same time it constituted and appointed him its attorney to receive and accept service of process agreeably to the statute laws of that state. On the 15th of January, 1897, it duly renewed this appointment. The written agreement constituting Harris the agent of the insurance company in Texas provided, among other things, that either party thereto might terminate it by giving to the other 30 days' notice in writing to that effect. Acting on this provision, the insurance company gave notice to Harris of the termination of their contract, and it became complete, and the contract terminated, on the 9th of September, 1897. On September 25, 1897, and again on October 6, 1897, the counsel who now appear for the defendant in error wrote to the plaintiff in error demanding the payment of the amount of the R. L. Long policy. On October 16, 1897, the plaintiff in error, by its actuary, William T. Standen, addressed a letter to Hon. Jefferson Johnson, insurance commissioner of the state of Texas, advising him that:

"Mr. J. W. Harris, of Waco, Tex., is no longer our manager, and subagents working for him, and for whom you issued licenses, no longer represent this company in that way. We therefore ask you to promptly revoke the licenses and power of acceptance on behalf of this company issued to Mr. Harris and all the subagents above referred to, as we have now no accredited representative working for us in your state."

On October 19, 1897, Commissioner Johnson acknowledged the receipt of this letter of revocation of authority of Mr. J. W. Harris and other agents to represent the company in Texas, and said, "Their certificates of authority and power to accept service have been canceled by this office." On October 22, 1897, the commissioner wrote again to the plaintiff in error to this effect:

"Gentlemen: After a consultation with the attorney general, we are of opinion that you have no right to cancel or order the cancellation of the powers of attorney to your agents in this state. The intent of the law is that no life insurance company shall be permitted to transact business or to collect premiums upon policies in force in the state of Texas without having an attorney appointed in the state to accept service from such policy holders as may have a legal claim against the company. You may regard our letter accepting your cancellation as having no authority, as we now declare these powers of attorney as being good, unless you shall appoint an attorney for service at once in this state. We await your action in this matter before taking any

further steps. It will not be profitable for the United States Life Insurance Company to undertake to avoid suit by the method you have seen fit to follow.

"Yours, very truly,    Jefferson Johnson, Commissioner."

On October 23, 1897, the proper notice for taking the deposition of J. W. Harris, with a copy of the interrogatories, and a precept to serve the same, was issued to the sheriff of McLennan county, Tex., and on the 25th of October was duly received by him, and served on J. W. Harris and W. W. Seley as agents of the United States Life Insurance Company. W. W. Seley is the president and sole owner of the Waco State Bank in Waco. On two or three occasions (the dates not given) the plaintiff in error had forwarded to the Waco State Bank claims upon its policy holders for premiums, etc., which were collected by the bank in the usual course of business, but not as agent for the United States Life Insurance Company, except for the special collection of each particular claim as received in the usual course of bank collections. This motion to suppress the deposition of J. W. Harris came on to be heard on the 22d of April, 1898, and the court, having heard the motion, the answer of the plaintiff thereto, and the argument of counsel thereon, was of opinion that the motion was not well taken, and on April 27, 1898, ordered that the same be overruled; to which ruling the defendant (the plaintiff in error), by its counsel, excepted, and tendered its bill of exceptions. In this bill of exceptions it is stated that on the hearing of this motion "it was further shown that the plaintiff never at any time received notice from the defendant company of the appointment of Jefferson Johnson as its attorney to receive service in lieu of the said Harris, and only received notice of said appointment of said Johnson from the said Johnson himself on or about October 30, 1897. It was admitted by the defendant that immediately upon notice of the appointment of said Johnson as the defendant's attorney to receive service in lieu of said Harris, which was after the perfection of service on said Harris and said Seley, the plaintiff caused service of notice and copies of interrogatories to be made on the said Johnson as the defendant's attorney, and that upon the expiration of the five days provided by the laws of the state of Texas for service of notice and copies of interrogatories upon said Johnson the plaintiff caused a commission to issue, with said interrogatories and the cross interrogatories of defendant attached, to take the answers of the witness J. W. Harris; and that before said commission could reach the hands of an officer qualified to take depositions, and immediately after the issuance of said commission, the said J. W. Harris died." On April 27, 1899, the plaintiff in error (the defendant below) made a second motion to suppress the deposition of J. W. Harris —First, on the ground on which its first motion had been made; and, second, because it appeared from the deposition, and from the interrogatories filed by the plaintiff, and from other portions of the record, "that at the time said deposition was taken the witness J. W. Harris resided at Waco, in the county of McLennan, in the state of Texas, and that this suit was then pending at the county seat of Limestone county, in the state of Texas, to wit, at the town of Groesbeck; and it is alleged that said town of Groesbeck is distant from the town of Waco, which was then and there the residence of the witness J. W. Harris,

less than one hundred miles, to wit, a distance of fifty miles, and that under the laws of the United States in such cases made and provided said deposition was unauthorized and invalid, and cannot be used upon the trial of this case." The second ground of this motion to suppress the deposition of J. W. Harris is clearly not good. The deposition was taken while the case was yet in the state court, in strict accordance with the provisions of the state law and practice in all other respects except that which is made the first ground of this motion. After the case was removed to the circuit court, the question whether the deposition could be used on the trial is one of federal, and not state, practice. But it is one which does not relate back to the time of the taking of the deposition under the state law. It appears from the recitation we have made from the bill of exceptions taken to the overruling of the first motion to suppress this deposition that several months before that motion was made the witness Harris had died, and at the time that motion was heard it was made to appear to the satisfaction of the court that the witness then was dead. If, therefore, the deposition was correctly taken according to the state law and practice, and it was made to appear to the satisfaction of the court that at the time the motion to suppress the deposition was acted upon, and at the time the deposition was offered in evidence on the trial, the witness was dead, the objection taken that the witness resided at a point less than 100 miles distant from the point where the state court was held, in which court the cause was pending at the time the deposition was taken, is not good. The act of congress approved March 9, 1892, provides that it shall be lawful to take the deposition or testimony of witnesses in the mode prescribed by the laws of the state in which the courts are held. But, independent of this act, the taking of depositions in the state court must be governed by state law. And section 865 of the Revised Statutes provides that, where depositions have been properly taken, such depositions may be used on the trial of the cause when it appears to the satisfaction of the court that the witness is then dead. By the laws and practice in Texas depositions may be taken in the state courts where the witness resides without the county in which the court is held. This record shows that the state court in which the case was pending was held in Limestone county, and that the witness resided in McLennan county. Unless, therefore, the objection which suggests the want of proper notice is good, the motion to suppress the deposition was properly overruled. As far as we can gather from the very able briefs, and from such consideration of the case as we have been able to give it ourselves, this ground of the motion presents a question of first impression. We have been referred to no direct authority on the subject, nor to any having a very close analogy as we view it. But, acting on our own construction of the language of the different provisions of the statute law of Texas on the subject, and gathering therefrom the apparent intention and spirit of the legislation of that state in reference to foreign corporations doing business therein, we are constrained to concur in the view of the attorney general of the state of Texas, and of the commissioner of insurance, and of the learned judge of the circuit court who overruled the motion, and we hold with him that the service of the notice to take the deposi-

tion in question, which was made upon J. W. Harris on the 25th day of October, 1897, having been made before the plaintiff in error had appointed Hon. Jefferson Johnson its attorney to acknowledge service of legal process in any suit or legal proceeding against said company in the state of Texas (which latter appointment seems not to have been made in New York until the 26th day of October, 1897, and not to have reached the appointee in Texas until the 30th day of that month) is binding on the plaintiff in error, and constituted legal notice to it of the intention of the defendant in error to take the deposition in question. That there was no necessary connection between the service that J. W. Harris was to render under his contract as the business agent of the licensee, and his competency or duty to accept service of legal process, or have the same served on him so as to bind the plaintiff in error, manifestly appears from the fact that at present the honorable commissioner of insurance, who certainly is not the business agent of the plaintiff in error, is constituted its representative to acknowledge service of legal process, etc. It will hardly be contended that the plaintiff in error could now revoke the authority of the Honorable Commissioner Jefferson Johnson to accept or receive service of legal process binding on the company without at the same time appointing some other attorney by whom such service could be accepted, or on whom service could be made. In the nature of the case, the appointee, while still alive, and capable of being reached, must continue to be competent to have such service made on him until a successor is appointed, and has qualified by acceptance. Therefore the fact that the agreement between the plaintiff in error and J. W. Harris terminated, according to its terms, on the 9th of September, 1897, does not necessarily involve or affect that representative capacity in which he was authorized to accept service of legal process, or at least to have service made upon him agreeably to the terms of the statutes of Texas for the protection of the citizens of Texas who held policies of insurance issued by the plaintiff in error, then doing business under and subject to the terms of its permission in that state. One of the vital conditions precedent to obtaining and using such permission was and is that the licensee should have and keep in that state such a representative by whom service could be accepted, or upon whom it could be had. We think the commissioner decided justly and wisely that the plaintiff in error could not revoke the authority it had granted without substituting another appointee by whom service could be accepted, or on whom it could be made, so as to bind the licensee. We conclude, therefore, that the first specification of error urged upon our attention is not well taken.

As to the second specification of error, given above, we are clear that it is not well taken. We have examined all the testimony with care, and we believe that the summary made by the trial judge is so supported by all the evidence that we are justified in accepting it as the uncontradicted testimony in the case. We therefore content ourselves with introducing here that part of the judge's charge which summarizes the proof:

"(1) Robert L. Long made his application in writing August 30, 1894, to the defendant company, for insurance upon his life in the sum of ten thousand

dollars. (2) That, in pursuance of said application, the defendant company issued the policy sued upon September 10, 1894, and immediately thereafter transmitted the said policy from its home office in New York City to J. W. Harris, of Waco, Texas, he then and there being the general agent of the defendant company for Texas. (3) That shortly after receiving said policy the said J. W. Harris went to Mexia, Texas, and took the policy with him for the purpose of delivering it to the said Robert L. Long, and collecting from him the first semiannual premium due thereon, amounting to $63.10. (4) That the said Robert L. Long accepted the said policy, and by agreement between him and the said J. W. Harris the said J. W. Harris agreed to pay said first premium for the said R. L. Long to the defendant company, and at the request of the said Robert L. Long the said J. W. Harris retained possession of said policy. (5) The said J. W. Harris delivered to the said R. L. Long said policy, and by his monthly report of November 28, 1894, remitted to the defendant company the said first semiannual premium; and that the said defendant company received the same shortly thereafter, and during the lifetime and sound health of the said Robert L. Long, and retained possession of same until advised of the death of the said R. L. Long. (6) That the said Robert L. Long died January 19, 1895. (7) That the defendant company waived proofs of death of the said Robert L. Long. That, the foregoing facts having been proven upon this trial, and being undisputed, you will find for the plaintiff."

It is contended in the brief for the plaintiff in error, and urged in the earnest oral argument made by its counsel in this court, that the deposition of the witness Harris, and the letter dated January 31, 1895, written by Harris to the company, and offered in evidence by the defendant in error on the trial of this case in the circuit court, conflict the one with the other, and present such an impeachment of that witness' veracity as to require that his deposition and his letter, in connection with the other testimony in the case, should have been submitted to the jury. We do not find the substantial variance as to any matter of fact in the deposition and the letter in question which counsel for the plaintiff in error suggests. To our minds, the substantive facts appear to be clearly shown by the letter and the deposition, the one in accord with the other; and on the proof as presented on the trial it became the duty of the trial judge to direct a verdict for the plaintiff, because, if he had not done so, and a different verdict had been returned, it would have been his duty to have set the verdict aside, and have awarded the plaintiff a new trial. Where the state of proof presents such a case, the judge is clearly right in directing a verdict; and, though it is a matter of some delicacy to review his discretion in cases where that discretion is exercised in favor of submitting an issue to the jury, the tendency of the later decisions is to hold the trial judge rigidly to the discharge of his duty, and, where the proof is such that it could rightly sustain but one view of the case, to direct a verdict. The judgment of the circuit court is affirmed.

PARDEE, Circuit Judge, dissents.