## COMMERCIAL BANKING CORPORATION v. MARTEL.

### No. 96.

Circuit Court of Appeals, Second Circuit.

Dec. 1, 1941.

Emanuel G. Kleid, of New York City, for plaintiff-appellee.

Julian A. Oshlag, of New York City, for defendant-appellant.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Only a question of admissibility of evidence is at issue on this appeal. In the trial before a jury, defendant's schedule of liabilities in his bankruptcy was introduced in evidence as an admission against him. When he sought to explain this, he was cut off by the court because "you cannot go behind a written record." This is urged as a prejudicial error.

The action is on a guaranty. Defendant, Martel, guaranteed payment of losses sustained by plaintiff, Commercial Banking Corporation, in its discounting of conditional sales contracts and chattel mortgages, for defendant's financing corporations, Tri-State Discount Co., Inc., and Motor Credit Corporation. Commercial's accountant

took the stand and explained the general course of dealings, the accounting method of Commercial, and the procedure in computing losses. He detailed the losses, stated several credits in favor of defendant's corporations, and gave an overall total loss to Commercial of $187,000. Defendant did not deny his contract of guaranty, but did seek to lessen the total loss. This was attempted partly through cross-examination of the accountant, designed to expose errors in calculation and partly through defendant's testimony on his own behalf. On cross-examination defendant admitted that he listed in his schedule of unsecured claims in bankruptcy, "Commercial Banking Corporation, guaranty, 1935, $100,000." On redirect he started to explain this, but was stopped by the court for the reason stated above. After vigorous objection by his counsel, and his request for permission to say something, the court allowed him to say that he had put down for $25,000 another creditor with whom he had never done business. His reason was that he "was advised to." Then the court asked, "Is that the same reason you put in this $100,000?" And the witness answered: "Yes, sir." The court then said, "All right, we have it," and refused to allow anything more, notwithstanding attempted argument and exception of counsel. The jury found for the plaintiff for the full amount claimed, and this appeal is from the resulting judgment.

Admissions may always be explained by the party against whom they are used. Ferris v. Sterling, 214 N.Y. 249, 108 N.E. 406, Ann.Cas.1916D, 1161; Morgan v. United States, 8 Cir., 169 F. 242; 4 Wigmore on Evidence, 3d Ed. 1940, § 1059, and cases cited. Such a rule has particularly cogent reasons for application when the admission is a schedule in bankruptcy. In view of the severe penalties for false statements, Bankruptcy Act, § 29, sub. b(2), 11 U.S.C.A. § 52, sub. b(2), the denial of a discharge for the same reason, § 14, sub. b (1), 11 U.S.C.A. § 32, sub. b(1), and the failure of a discharge to apply to unscheduled debts, § 17, 11 U.S.C.A. § 35, a bankrupt is well advised to put down every conceivable obligation without any reservation. When later confronted by his statement, he should obviously be permitted to explain all the extenuating circumstances. Therefore, unless some exception can be found in this case, the exclusion was error.

Plaintiff first argues that defendant made a sufficient explanation when he was allowed to point out that upon advice he scheduled a debt he had never owed, and to state that for the same reason he listed plaintiff as a creditor for $100,000. If this was an explanation, it surely had little weight with the jury. Defendant admitted that he made a contract with plaintiff, and the only issue in the case was the extent of his obligation, if any. An explanation that he "never owed them and never did business with them," which he stated about another scheduled creditor, would not impress the jury at all as to this creditor.

Plaintiff also argues that the error was not prejudicial. This raises a more difficult question. It is not always easy for an appellate court to determine when the interests of justice require a reversal because of an erroneous ruling on evidence; but where the ruling is, as here, harshly exclusionary, there is more question as to the result reached below than when all the evidence has come before the jury. True, we are admonished by the federal rules to save judgments where possible; but the rules also provide directly for the widest admissibility possible under any existing law, state or federal, of relevant evidence. Federal Rules of Civil Procedure, rule 43 (a), 28 U.S.C.A. following section 723c; Green, The Admissibility of Evidence under the Federal Rules, 55 Harv.L.Rev. 197; Callahan and Ferguson, Evidence and the New Federal Rules of Civil Procedure; 2, 47 Yale L.J. 194. Here only the single matter of amount of damage was at issue, and on it plaintiff had in substance only the one witness, Gack, the accountant who kept the books. The accuracy of Gack's figures was challenged by defendant's direct evidence, and by inconsistencies in Gack's own testimony and affidavit previously filed in court. Defendant's entire attack would go for little if his admission of large liability stood without explanation, especially in view of the court's comments that the record spoke for itself. This is preëminently the type of question for the jury; certainly we should not have ordered a verdict directed on the ground that the accountant's veracity and accuracy had been shown beyond question. We think the ends of substantial justice require a new trial. F.R.C.P. rule 61; Cervin v. W. T. Grant Co., 5 Cir., 100 F.2d 153, 155.

Reversed and new trial ordered.

848

L. HAND, Circuit Judge (dissenting).

I agree that the original refusal to let the defendant explain his schedule was a plain error, and that the explanation later allowed was too meagre; but I cannot agree that either error justifies a reversal of the judgment. The plaintiff's case was founded upon its books which were shown to be kept in due course and in which no irregularities appeared. They were, however, kept by one, Gack, who was shown to have made some inconsistent statements as to some of the items that entered into the aggregate loss which the plaintiff claimed. This was all that did in any way impeach the books, for the defendant's testimony amounted to nothing whatever. Gack's inconsistencies could have been rationally relevant only in two ways: they might have been used to exclude from the plaintiff's loss those items which they touched, or they might have been used to throw general discredit on all Gack's testimony, including the accuracy of the books on which the case was founded. So far as they tended to throw doubt upon the items specifically, any explanation of the admission in the schedules would have been irrelevant, because the admission itself was irrelevant. The verdict was for $187,000 and the aggregate of the supposedly doubtful items was less than $87,000. At most the admission tended to establish an indebtedness of only $100,000 and did not help to meet any infirmities in Gack's testimony concerning any part of the claim in excess of that sum. In theory more can perhaps be said for the admission as tending to overcome any discredit which his inconsistencies may have thrown upon Gack's testimony in general; but it seems to me impossible to treat its importance seriously. To do so we must suppose that, being in doubt, because of his inconsistencies, whether Gack might not have fabricated the books, or so kept them that they were unreliable, the jury laid its doubts by recourse to the admission. I suppose that it is impossible to demonstrate that that could not have happened; but to me it is fanciful to imagine that any jury might have pressed such trivial circumstances so far, and I cannot help thinking that in reversing this judgment we are reverting to a disposition towards the admission of evidence which appellate courts long ago abandoned and which Rule 61 now forbids, certainly in the District Courts.